IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ROBERT STOEDTER,<br><br>          Plaintiff,<br><br>v.<br><br>KENNETH C. GATES, an individual, and<br>KENYON T. MADSEN, an individual,<br><br>          Defendants. | **MEMORANDUM OPINION AND<br>ORDER GRANTING FEES<br>AND COSTS**<br><br><br>Case No. 2:12-CV-00255-BSJ<br><br>District Judge Bruce S. Jenkins |

## **INTRODUCTION**

At its most basic, this case at this point is about what should be paid to counsel for work

done and costs incurred to vindicate Plaintiff Robert Stoedter's ("Plaintiff") constitutional right

to be free from unlawful seizure. Inherent in that vindication are the ancillary benefits of

stressing the importance of that right, educating law enforcement personnel as to proper

procedures implicating that right, and clarifying the understanding of those who instruct law

officers as to what is required to conform with the Fourth Amendment.

Plaintiff prevailed three times during trial and post-trial proceedings, namely in an early

opinion of the court,[1] in the court's granting of Plaintiff's motion for a directed verdict,[2] and in

---

[1] *See* August 6, 2014 Memorandum Opinion and Order (hereinafter the "August 2014 Memorandum Opinion") (CM/ECF No. 122).

[2] *See* Jan. 15, 2015 Hr'g Tr., (CM/ECF No. 225) at 682:1-8, 694:7-695:5; Jan.16, 2015 Hr'g Tr., (CM/ECF No. 222) at 711:6-10.

the court's post-trial determination that Plaintiff was entitled to nominal damages as a matter of law because his Fourth Amendment rights were violated.[3]

Plaintiff prevailed a fourth time by the affirmation of the Court of Appeals for the Tenth Circuit.[4]

In consideration of Plaintiff's application for attorney's fees and costs, the court held evidentiary hearings on December 7, 2017 and January 22, 2018 and closing arguments on January 31, 2018. Diana Huntsman appeared on behalf of Plaintiff, and Andrew Morse and R. Scott Young appeared on behalf of Defendants Kenneth Gates and Kenyon Madsen ("Defendants"). As indicated in the briefing and as clarified at the hearings, Plaintiff seeks a total of $582,902.50 in attorney's fees and costs:

- $321,550.95 in attorney's fees incurred through trial;

- $94,301.25 in attorney's fees incurred in post-trial motions;

- $156,557.50 in attorney's fees incurred at the appellate court level; and

- $10,492.80 in costs incurred at the district court and appellate court level.

Having considered the parties' briefs, the evidence presented, the arguments of counsel, and the relevant law, the court hereby GRANTS IN PART Plaintiff's applications for attorney's fees and costs. As further discussed below, Plaintiff is entitled to reasonable attorney's fees and costs incurred throughout the case, but the amount of such fees is subject to adjustments. The

---

[3] *See* June 17, 2015 Memorandum Opinion and Order (hereinafter the "June 2015 Memorandum Opinion") (CM/ECF No. 247) at 19.

[4] *See* Aug. 3, 2017 Tenth Circuit Order and Judgment (CM/ECF No. 279).

court finds that the total amount of reasonable attorney's fees and costs awardable to Plaintiff is

$260,552.57.[5]

## PROCEDURAL HISTORY[6]

- **February 23, 2012**: Plaintiff filed a complaint against Salt Lake County, Riverton City, Unified Police Department, and Officers Kenneth Gates, Kenyon Madsen, Gregg Shaver, and Brooks Green alleging seven causes of action: (1) violation of the Fourth Amendment by the officers for unreasonable search and seizure and excessive force, (2) violation of the Fourth Amendment by Salt Lake County and Riverton City for failure to train and/or supervise and for deficient policies, (3) violations of Utah Constitution Article I, Sections 1, 7, 9, and 14, (4) negligence by Salt Lake County, Riverton City, and Unified Police Department, (5) negligence by Officers Gates, Madsen, Shaver, and Green, (6) battery, and (7) assault. Plaintiff asked for compensatory and punitive damages for these claims.[7]

- **February 7, 2014**: Defendants Salt Lake County, Brooks Green, and Gregg Shaver were dismissed.[8]

- **March 18, 2014:** Defendant Riverton City was dismissed.[9] Plaintiff's claims for negligence, battery, and assault were dismissed.[10]

- **August 6, 2014:** The court issued a decision (the "August 2014 Memorandum Opinion") denying the parties' summary judgment motions. The August 2014 Memorandum Opinion determined that, upon arriving at the scene of events, Officers Gates and Madsen did not have reasonable suspicion that an armed robbery or similar armed crime was afoot. Thus, a future jury determination on whether reasonable suspicion or probable

---

[5] The court attaches its own Exhibit A at the end of this Memorandum Opinion, which provides a breakdown of the court's calculation of attorney's fees and costs.

[6] The court's August 2014 Memorandum Opinion denying the parties' summary judgment motions provides a more extensive discussion of the underlying facts in the case and the absence of reasonable suspicion or probable cause justifying Defendants' seizure of Plaintiff. *See* August 2014 Memorandum Opinion (CM/ECF No. 122).

[7] *See* First Am. Compl. (CM/ECF No. 2-1).

[8] *See* Order (CM/ECF No. 76).

[9] *See* Order (CM/ECF No. 95).

[10] *See* Order (CM/ECF No. 96).

cause existed to support Defendants' actions would be limited in scope to the time period following the officers' approach and initial orders.[11]

- **January 5, 2015:** During final pretrial conference, Defendant Unified Police Department was dismissed.[12]

- **January 7, 2015:** The parties submitted a revised stipulated pretrial order, wherein Plaintiff no longer asserted claims for violation of the Utah Constitution.[13] The parties also each separately provided the court with proposed jury instructions. Plaintiff's proposed instructions did not include an instruction on nominal damages.[14] Defendants' proposed instructions did include an instruction on nominal damages.[15]

- **January 12-16, 2015:** The court held a jury trial on the case's sole remaining claim.

  - After the parties rested, both Plaintiff and Defendants moved for directed verdict.[16] The court granted Plaintiff's motion, finding the manner in which Officers Gates and Madsen conducted their investigation violated the Fourth Amendment.[17] Having so determined, the court found there were two remaining questions for the jury to answer: did the actions of Officers Gates and Madsen in violation of the Fourth Amendment cause damage to Plaintiff, and, if so, how much?[18]

  - Thereafter, the court provided the parties with a package of proposed jury instructions, which did not include an instruction on nominal damages. The parties were given an

---

[11] *See* August 2014 Memorandum Opinion (CM/ECF No. 122) at 1, 18.

[12] *See* Minute Entry (CM/ECF No. 145).

[13] *See* Third Stipulated Proposed Pretrial Order (CM/ECF No. 259-1).

[14] *See* Pl.s' First Am. Proposed Jury Instructions (CM/ECF No. 148). Note: Plaintiff's original set of proposed jury instructions (CM/ECF No. 66), provided on February 2, 2014, similarly did not provide an instruction on nominal damages.

[15] *See* Defs.' Proposed Jury Instructions (CM/ECF No. 147) at 37 of 52.

[16] *See* Jan. 15, 2015 Hr'g Tr., (CM/ECF No. 225) at 682:1-8, 694:7-695:5.

[17] *See* Jan. 16, 2015 Hr'g Tr., (CM/ECF No. 222) at 711:6-10.

[18] *See id.* at 716:10-13.

opportunity to read through the packet and voice concerns at a jury instruction conference.[19]

- o At the jury instruction conference, Defendants requested that their proposed nominal damages instruction be added to the final instruction packet presented to the jury.[20] The court denied Defendants' request and indicated it would not give an instruction on nominal damages.[21] Thereafter, in response to the court's inquiry as to whether Plaintiff had anything additional to raise, counsel for Plaintiff stated, "No, Your Honor. We have nothing to add."[22]

- o After the jury instruction packet and special verdict form were accepted and agreed to, the parties made closing arguments, the court instructed the jury, and the jury retired for deliberations.[23]

- o The special verdict form asked the jury two questions: (i) did Plaintiff suffer damages as a result of the constitutional violations; and (ii) if so, how much will fairly compensate Plaintiff for such damages?[24]

- o After deliberations, the jury returned a verdict finding that Plaintiff suffered no damages as a result of the constitutional violations.[25]

- **January 30, 2015**: The Clerk of Court entered judgment in favor of Defendants.[26]

- **February 13, 2015**: Plaintiff filed his original motion for attorney's fees.[27]

---

[19] *See id.* at 716:14-717:11.

[20] *See id.* at 727:5-11.

[21] *See id.* at 727:12-15.

[22] *See id.* at 728:7-9.

[23] *See* Minute Entry (CM/ECF No. 163).

[24] *See* Special Verdict Form (CM/ECF No. 168).

[25] *See id.*

[26] *See* Judgment (CM/ECF No. 173).

[27] *See* Pl.'s Mot. for Attorney's Fees (CM/ECF No. 177).

- **February 27, 2015**: Defendants filed a notice of appeal.[28]

- **February 27, 2015**: Plaintiff filed a Motion for Judgment as a Matter of Law Under Rule 50, or in the Alternative, a New Trial Under Rule 59.[29] In that motion, Plaintiff argued as follows:

  > The Court should grant Mr. Stoedter an award of damages under Rule 50(b). When the Court granted Mr. Stoedter a directed verdict as it relates to the 4[th] Amendment, it held that Mr. Stoedter's Constitutional rights had been violated. That violation alone should give Plaintiff a claim for damages. In addition, the Court heard evidence from two physicians that the Plaintiff was in fact injured, from his encounter with the Defendant police officers, and as such, is entitled to damages.

  > As such, it is within the Court's power and discretion to award Mr. Stoedter damages as a result of his injuries. Or, in the alternative, the Court could order a new trial on the issue of damages alone, since the Court directed verdict on the issue of liability.[30]

- **June 17, 2015**: The court issued a Memorandum Opinion and Order (the "June 2015 Memorandum Opinion") partially granting Plaintiff's Motion for Judgment as a Matter of Law Under Rule 50, or in the Alternative, a New Trial Under Rule 59.[31] In the June 2015 Memorandum Opinion, the court denied Plaintiff's request for compensatory damages, but the court granted Plaintiff's request for nominal damages, stating that judgment should be amended in favor of Plaintiff in the amount of $1.[32]

- **June 18, 2015**: The Clerk of Court entered amended judgment in favor of Plaintiff.[33]

- **September 13, 2017**: The Tenth Circuit issued its Mandate, affirming this court's determination that the Defendants unreasonably seized Plaintiff in

---

[28] *See* Defs.' Notice of Appeal (CM/ECF No. 186).

[29] *See* Pl.'s Mot. for J. as a Matter of Law Under Rule 50, or in the Alternative, a New Trial Under Rule 59 (CM/ECF No. 188).

[30] *See id.* at 3.

[31] *See* June 2015 Memorandum Opinion (CM/ECF No. 247).

[32] *See id.* at 3, 38.

[33] *See* Amended Judgment (CM/ECF No. 251).

violation of the Fourth Amendment and that nominal damages were warranted.[34]

- **October 4, 2017:** Plaintiff filed his Supplemental Motion for Attorney Fees.[35]

- **October 10, 2017:** In response to briefing Plaintiff filed at the appellate court level related to appellate level fees and costs—as well as the resulting dispute as to the timeliness of such briefing—the Tenth Circuit issued a decision denying Plaintiff's bill of costs as untimely but directing the Clerk of the Tenth Circuit to accept as filed Plaintiff's proposed motion for appellate attorney fees.[36]

- **October 30, 2017:** The Tenth Circuit granted Plaintiff's motion for appellate attorney fees and remanded to this court "for a determination of the amount of appellate attorneys' fees that were reasonably and necessarily incurred."[37]

- **December 7, 2017:** The court held an evidentiary hearing on Plaintiff's applications for district level and appellate level attorney's fees and costs.[38]

- **January 22, 2018:** The court held a continued evidentiary hearing on Plaintiff's applications for district level and appellate level attorney's fees and costs.[39]

- **January 31, 2018:** The court heard closing argument from the parties on Plaintiff's applications for district level and appellate level attorney's fees and costs. At the close of argument, the court reserved on the matter.[40]

---

[34] *See* Aug. 3, 2017 Tenth Circuit Order and Judgment (CM/ECF No. 279).

[35] *See* Suppl. Mot. and Mem. in Re: Pl.'s Pending Mot. for Attorneys' Fees (CM/ECF No. 280).

[36] *See* Oct. 10, 2017 Tenth Circuit Order (CM/ECF No. 286).

[37] *See* Oct. 30, 2017 Tenth Circuit Order (CM/ECF No. 288).

[38] *See* Minute Entry (CM/ECF No. 298).

[39] *See* Minute Entry (CM/ECF No. 308).

[40] *See* Minute Entry (CM/ECF No. 309).

## LEGAL FRAMEWORK

Plaintiff seeks attorney's fees pursuant to 42 U.S.C. § 1988(b), which states in relevant part that "[i]n any action or proceeding to enforce a provision of sections . . . 1983 . . . of this title, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ."

"The general rule under § 1988 is that 'the prevailing party "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.""[41] "In enacting § 1988, Congress pointed out that '[a]ll of these civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain.'"[42] "In view of this clearly expressed congressional intent, [the Tenth Circuit] has recognized that the 'district court's discretion to deny fees to a prevailing party is quite narrow.'"[43]

According to the Tenth Circuit, "[t]he first question in determining whether a party is entitled to attorney's fees under § 1988 is whether he or she qualifies as a 'prevailing party.'"[44] In the June 2015 Memorandum Opinion, the court already determined as a matter of law that the violation of Plaintiff's Fourth Amendment rights entitled Plaintiff to nominal damages and that

---

[41] *Phelps v. Hamilton*, 120 F.3d 1126, 1131 (10th Cir. 1997) (quoting *Blanchard v. Bergeron*, 489 U.S. 87, 89 n.1 (1989)).

[42] *Id.* (quoting S.Rep. No. 1011, 94th Cong., 2nd Sess. 2 (1976)).

[43] *Id.* (quoting *Wilson v. Stocker*, 819 F.2d 943, 951 (10th Cir. 1987)).

[44] *Id.* at 1130.

such damages made Plaintiff the prevailing party.[45] Thus, Plaintiff satisfies the first question regarding attorney's fees.

"The second question in the attorney's fees inquiry is to determine what amount of 'reasonable attorney's fees' should be awarded to the prevailing party."[46] "A court will generally determine what fee is reasonable by first calculating the lodestar—the total number of hours reasonably expended multiplied by a reasonable hourly rate—and then adjust the lodestar upward or downward to account for the particularities of the suit and its outcome."[47] For cases that "result in a merely technical or de minimus [sic] award, however, a court may 'lawfully award low fees or no fees' without calculating a lodestar."[48] Consequently, "[i]n some circumstances, even a plaintiff who formally 'prevails' under § 1988 should receive no attorney's fees at all."[49]

In determining whether an award is a merely "technical or de minimis award," such that no attorney's fees should be awarded, the Tenth Circuit looks to Justice O'Connor's concurring opinion in *Farrar v. Hobby*, 506 U.S. 103 (1992). There, Justice O'Connor noted that not "*all* nominal damages awards are *de minimis*. Nominal relief does not necessarily a nominal victory make."[50] Instead, Justice O'Connor's concurrence "distills various principles from the Court's § 1988 case law into a three-part test to determine whether a prevailing party achieved enough success to be entitled to an award of attorney's fees. The 'relevant indicia of success' in such

---

[45] *See* June 2015 Memorandum Opinion, (CM/ECF No. 247) at 38.

[46] *Phelps*, 120 F.3d at 1130 (quoting 42 U.S.C. § 1988(b)).

[47] *Id.*at 1131 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983)).

[48] *Id.* (quoting *Farrar v. Hobby*, 506 U.S. 103, 115 (1992)).

[49] *Id.* (quoting *Farrar v. Hobby*, 506 U.S. 103, 115 (1992)).

[50] *Farrar v. Hobby*, 506 U.S. 103, 121 (1992) (emphasis in original).

cases are: (1) the difference between the judgment recovered and the recovery sought; (2) the significance of the legal issue on which the plaintiff prevailed; and (3) the public purpose of the litigation."[51]

Thus, under *Farrar* and Tenth Circuit precedent, although a party may recover no actual damages, insofar as his recovery was not merely technical or de minimis, he should still receive an appropriate, reasonable amount of attorney's fees.[52]

## DISCUSSION

There are essentially two issues before the court: (i) is Plaintiff entitled to an award of his attorney's fees and costs incurred throughout this litigation, and, if so, (ii) what is the appropriate amount of such award? Each issue will be addressed in turn.

A. Is Plaintiff Entitled to an Award of His Attorney's Fees and Costs?

The parties segregate this case into three separate stages of litigation—trial, post-trial motions, and appeal. The court will consider whether Plaintiff is entitled to attorney's fees and costs for each stage of litigation.

i.   *The Case Through Trial*

Plaintiff first seeks recovery of attorney's fees and costs incurred through trial. In opposition, Defendants contend Plaintiff achieved merely a technical or de minimis victory and is entitled to zero or minimal fees.[53]

---

[51] *See Phelps*, 120 F.3d at 1131 (quoting *Farrar*, 506 U.S. at 121-22).

[52] *See id.* at 1133 ("Based upon our analysis of the *Farrar* factors, we hold that each of these factors weighs in favor of a determination that while the plaintiffs' success in this case may have been limited, it was not merely technical or *de minimus* [sic]. Accordingly, we hold that the district court abused its discretion in not undertaking an analysis to determine what amount of attorney's fees would be reasonable in light of the plaintiffs' success in challenging the Kansas Funeral Picketing Act. We therefore remand this case to the district court for a determination of the reasonable amount of attorney's fees."); *Koopman v. Water Dist. No. 1 of Johnson Cty., Kan.*, 41 F.3d 1417, 1421 (10th Cir. 1994) ("It is indisputable that Koopman did not prove actual damages and so under *Farrar* is not entitled to full reimbursement for attorney's fees and costs. Nonetheless, his lawsuit was successful in important ways. We remand the issue of the appropriate amount of attorney's fees and costs to the district court.").

As noted above, the court previously determined that Plaintiff's Fourth Amendment rights were violated, that Plaintiff was entitled to nominal damages, and that Plaintiff therefore was the prevailing party in the action before this court.[54] Thus, in analyzing whether Plaintiff should recover attorney's fees incurred through trial, the court must next consider whether the victory Plaintiff achieved is sufficient to justify awarding fees under 42 U.S.C. § 1988(b). Applying Justice O'Connor's three-part *Farrar* test, the court finds awarding attorney's fee incurred through trial is warranted.

The first *Farrar* factor looks to the difference between the judgment recovered and the judgment sought. In the present case, Plaintiff acknowledges that he requested $450,000 in damages during trial but that he recovered only $1.[55] While Plaintiff's nominal damages are a limited recovery compared to what he sought, such discrepancy is substantially less than the discrepancy in *Farrar*, wherein the plaintiff sought $17 million in compensatory damages but received only $1.[56]

The second *Farrar* factor—the significance of the legal issue on which the plaintiff prevailed—weighs heavily in Plaintiff's favor. This factor "goes beyond the actual relief awarded to examine the extent to which the plaintiffs succeeded on their theory of liability."[57] Plaintiff proved that his Fourth Amendment rights had been violated as a matter of law. This is a significant victory achieved through trial.

---

[53] *See* Defs.' Mem. in Opp'n to Pl.'s Suppl. Mot. for Attorney's Fees, filed Nov. 1, 2017 (CM/ECF No. 289) at 3-5.

[54] *See* June 2015 Memorandum Opinion (CM/ECF No. 247) at 38.

[55] *See* Pl.'s Mot. and Mem. for Appellate Attorney Fees (CM/ECF No. 293-1) at 116 of 273.

[56] *See Farrar*, 506 U.S. at 114.

[57] *Phelps*, 120 F.3d at 1132 (citation omitted).

The third *Farrar* factor—the public purpose of the litigation—also weighs in Plaintiff's favor. This litigation served several public purposes. As an initial matter, it emphasizes that officers must have reasonable suspicion or probable cause before seizing an individual, even when responding to a general report that a man has a gun.[58] Defendants argued repeatedly throughout this litigation that seizing Plaintiff—approaching Plaintiff with guns drawn and ordering him to put his hands up and step off the porch—was how officers were trained to handle "man with a gun" investigations.[59] As the Defendants acknowledge, this court's ruling and the Tenth Circuit's affirmation that Defendants' actions violated Plaintiff's clearly established Fourth Amendment rights "will force police agencies to reevaluate officer training."[60] Indeed, they should. And such will benefit not only average citizens, whose Fourth Amendment rights are protected in the future from constitutionally deficient actions, but also other police officers, who are now more likely to be properly trained and thus face a lower risk of liability. Further, this litigation served the public purpose of fortifying the fact that, in the Tenth Circuit at least, nominal damages are mandatory upon a finding of a constitutional violation under 42 U.S.C. §

---

[58] The court notes that the emphatic citizen who made the 911 call and reported the incident was far more descriptive than simply "man with a gun." *See* Dispatch Transcript, (CM/ECF No.103-3) at 2:5-8; Dispatch Transcript, (CM/ECF No. 103-6) at 2:12-4:11.

[59] *See, e.g.*, February 11, 2014 Hr'g Tr. (CM/ECF No. 89) at 239:9-10 ("And the police are trained to get control of these folks before discussing why they are there."); June 20, 2014 Hr'g Tr. at 48:21-49:3 ("And their reasonable training, the protocol that makes a lot of sense, is that you need to protect yourself when you're doing any of these investigations with regard to a man with a gun call. And the way to do that is to have your gun out at a low ready, and if you confront anybody, if you see anybody who is there, and these two men, one of them match the description, then you have to get control of them."); January 12, 2015 Hr'g Tr. (CM/ECF No. 239) at 27:9-28:3 ("Officers are trained to approach man with a shotgun calls with their sidearms in their hands. . . . So handguns are in the officers hands per their training. . . . Officers are trained that when they go to a man with a gun call, especially a man with a shotgun call, that the first thing they need to do is get control of the scene so that they can safely investigate what is going on. Without control no one is safe. Control means that the subjects that you meet are obeying your lawful commands to do what you think they need to do so that the officers can guarantee that they are going to be safe when they're investigating."; January 14, 2015 Hr'g Tr. (CM/ECF No. 221) at 358:17-18 ("They are trained to get control, first, so they can have a conversation.").

[60] *See* Petition for Rehearing and Rehearing *En Banc*, (CM/ECF No. 280-1) at 8 of 21.

1983.[61] This clarity regarding nominal damages is important for future parties, as nominal damages affect the entry of a final judgment and a plaintiff's ability to vindicate his or her constitutional rights.

Tenth Circuit precedent supports this court's conclusion that, under the *Farrar* three-part test, Plaintiff achieved more than a technical or de minimis victory and should receive reasonable attorney's fees.

For example, in *Koopman v. Water Dist. No. 1 of Johnson Cty., Kan.*, 41 F.3d 1417 (10th Cir. 1994), the plaintiff had brought a due process claim after he was discharged from his job.[62] The lower court had ruled as a matter of law that the plaintiff had been denied both pre-termination and post-termination hearings, but the jury awarded him only $1.[63] The Tenth Circuit affirmed the lower court's judgment on the merits, but it reversed and remanded the lower court's decision of not awarding the plaintiff attorney's fees.[64] The Tenth Circuit found as follows:

> Unlike the litigation in *Farrar,* this litigation has not been protracted nor are the claims for damages extravagant and, as Koopman claims, his victory sends an important message to the District. As a result of this case, the District is on notice that it must provide its employees with constitutionally adequate pretermination and post-termination hearings. This is a significant victory. Although it is true Koopman received only a nominal award, the present and future employees of the District benefit by having their rights affirmed.
>
> It does not appear to us this is the kind of case *Farrar* was intended to discourage attorneys from taking. It is true Koopman was not successful in proving he was damaged, but we do not believe he and his attorney should bear the entire cost of battling the District's unconstitutional practices. Deterring meritorious lawsuits on

---

[61] *See* Aug. 3, 2017 Tenth Circuit Order and Judgment (CM/ECF No. 279) at 18 ("Thus, we agree with the district court that, under *Searles,* nominal damages are mandatory upon a finding of a constitutional violation.").

[62] *See Koopman v. Water Dist. No. 1 of Johnson Cty., Kan.*, 41 F.3d 1417, 1418 (10th Cir. 1994).

[63] *See id.*

[64] *See id.*

constitutional issues because they offer a small likelihood of a significant money judgment presents as grave a danger to our legal system as frivolous litigation. In the past, we have attempted to balance these concerns in cases where nominal damages were awarded but which involved the vindication of a constitutional right of significance extending beyond the plaintiff by reducing rather than denying the award of attorney's fees.

It is indisputable that Koopman did not prove actual damages and so under Farrar is not entitled to full reimbursement for attorney's fees and costs. Nonetheless, his lawsuit was successful in important ways. We remand the issue of the appropriate amount of attorney's fees and costs to the district court.[65]

Relevant to the present case, the Tenth Circuit in *Koopman* determined that the plaintiff's minimal $1 recovery under the first *Farrar* factor did not bar plaintiff from receiving attorney's fees and costs. Instead, looking to the second and third *Farrar* factors—i.e., the plaintiff's vindication of his due process rights and the benefit this provided to fellow employees in notifying the employer that it must provide adequate pre-termination and post-termination hearings—the Tenth Circuit found that an appropriate amount of attorney's fees and costs should be awarded.

Similarly, in *Brandau v. State of Kansas*, 168 F.3d 1179 (10th Cir. 1999), the Tenth Circuit found an award of attorney's fees to be appropriate, despite the plaintiff's limited monetary recovery. In *Brandau*, the plaintiff sued her former state employer on a number of claims, but she only prevailed on her claim for hostile work environment.[66] The jury awarded her nominal damages of $1.[67] Applying the *Farrar* three-part test, the Tenth Circuit upheld the district court's decision to award the plaintiff attorney's fees:

---

[65] *See id.* at 1421 (internal citations and footnote omitted).

[66] *See Brandau v. State of Kansas*, 168 F.3d 1179, 1180-81 (10th Cir. 1999).

[67] *See id.* at 1181.

In this case, the district court applied precisely the analysis we adopted in *Phelps*. Analyzing the degree of success obtained, the first factor under *Farrar*, the court found that, despite Plaintiff's limited monetary recovery, her victory was not merely technical or de minimis; instead, the jury's "verdict vindicated the violation of her civil rights." The court determined that the difference between the judgment recovered and the recovery sought was significantly distinct from the corresponding difference in *Farrar*: Plaintiff's claims for damages were not extravagant-she sought only back pay for twenty-one months and $50,000 in non-economic damages-while Mr. Farrar sought damages of $17 million. The court also relied on the fact that, unlike Mr. Farrar's litigation which was drawn out over ten years and two appeals, Plaintiff's litigation was not protracted. Citing this court's decision in *Koopman v. Water District No. 1*, 41 F.3d 1417, 1421 (10th Cir.1994), the court determined that Plaintiff's nominal damage award did not preclude an award of fees.

With respect to the second *Farrar* factor, the significance of the legal issue on which the plaintiff prevailed, the district court determined that Plaintiff succeeded on her primary claim, sexual harassment. Therefore, although she lost her retaliation and constructive discharge claims, Plaintiff "succeeded on a 'significant issue in litigation which achieves some of the benefit [she] sought in bringing suit.' "

Finally, in examining the third factor, the public purpose served by the plaintiff's success, the district court weighed whether "the judgment deters future lawless conduct as opposed to merely 'occupying the time and energy of counsel, court, and client.' " The court found that Plaintiff presented "evidence that supervisory personnel in [her] department had little training in how to investigate sexual harassment charges, and ... that, in this case, the department's policy on sexual harassment was not followed." Thus, the court found that, "[a]s a result of this case, defendant is on notice that it must educate its employees about sexual harassment in the workplace and must promptly investigate any such claims," and "the present and future employees of both the Wyandotte County Adult Probation Division, and of the State, benefit by having their rights affirmed." In short, the court found that while Plaintiff's litigation did not achieve significant monetary benefits, it served a larger public purpose. Although Defendant disputes whether such a benefit in fact occurred and argues that any benefit achieved is speculative, "the [d]istrict [c]ourt was free, within the bounds of the clearly erroneous standard, to find that the lawsuit did benefit" the employees of Kansas and Wyandotte County.

. . .

> We conclude that the district court appropriately evaluated the reasonableness of a fee award to Plaintiff in light of controlling case law. We also hold that the court did not abuse its discretion in awarding to Plaintiff $41,598.13 in fees and expenses.[68]

As with *Koopman* and *Brandau*, application of the three-part *Farrar* test warrants a finding in the present case that Plaintiff is entitled to a reasonable amount of attorney's fees and costs. Plaintiff did not achieve merely a technical or de minimis victory: although Plaintiff recovered only limited monetary damages, he successfully vindicated his Fourth Amendment rights and provided a meaningful public benefit to Utah citizens and police officers.

Thus, the court finds Plaintiff is entitled to reasonable attorney's fees and costs incurred through trial.

ii.   *Post-Trial Motions*

Second, Plaintiff seeks attorney's fees incurred in post-trial motions. In this segment of litigation, Plaintiff largely prevailed. Although the court partially denied Plaintiff's post-trial motion,[69] in that the court denied Plaintiff's request for compensatory damages and a new trial, the court granted the motion on two major issues. First, the court granted Plaintiff's request for nominal damages. Second, the court granted Plaintiff's request to amend judgment to make Plaintiff the prevailing party.[70]

Thus, the court finds Plaintiff is entitled to reasonable post-trial attorney's fees.

---

[68] *Id.* at 1182-83 (internal citations and footnotes omitted).

[69] Pl.'s Mot. for J. as a Matter of Law Under Rule 50, or in the Alternative, a New Trial Under Rule 59, filed Feb. 27, 2015 (CM/ECF No. 188).

[70] *See* June 2015 Memorandum Opinion (CM/ECF No. 247).

### iii. *Appeal Before Tenth Circuit*

As to the third and final segment of litigation, the Tenth Circuit has already spoken on the issue of appellate level attorney's fees: the Tenth Circuit ruled that Plaintiff is entitled to attorney's fees and remanded the question to this court to determine the amount of appellate attorney's fees that were reasonably and necessarily incurred.[71]

Thus, pursuant to the Tenth Circuit's order, Plaintiff is entitled to reasonable appellate level attorney's fees.[72]

### B. What are the Appropriate Amounts of Attorney's Fees and Costs?

Having determined that Plaintiff is entitled to reasonable attorney's fees and costs incurred throughout litigation, the court must next determine what amount should be awarded.

Plaintiff provided evidence that he incurred $444,237.00 in attorney's fees through trial—which Plaintiff's counsel voluntarily reduced by 40%, for a net amount of $266,542.20—as well as $67,026.25 in attorney's fees in post-trial motions and $113,493.75 in attorney's fees on appeal.[73] Additionally, Plaintiff provided evidence that he incurred costs through trial in the amount of $9,370.44, as well as additional expenses on appeal in the amount of $1,122.36.[74]

Addressing first the costs and expenses incurred through trial and on appeal, the court finds such amounts to be reasonable. The court awards Plaintiff $9,370.44 for costs through trial

---

[71] *See* Oct. 30, 2017 Tenth Circuit Order (CM/ECF No. 288).

[72] The court notes that these appellate level fees include the appellate costs Plaintiff seeks under 42 U.S.C. § 1988. As the Tenth Circuit has instructed, "[i]tems that are normally itemized and billed in addition to the hourly rates should be included in fee allowances in civil rights cases if reasonable in amount." *See Ramos v. Lamm*, 713 F.2d 546, 559 (10th Cir. 1983), *overruled on other grounds, Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 725 (1987).

[73] *See* Aff. Of Attorney's Fees, (CM/ECF No. 177-1); Corrected Suppl. Decl. of Pl.'s Counsel Regarding Post-Trial Attorney's Fees, (CM/ECF No. 283); Pl.'s Evidentiary Hr'g Exhibits 3, 4, 5, 6, 7, 8, 9.

[74] *See* Pl.'s Evidentiary Hr'g Exhibits 12, 13, 14, 15, 16, 17.

under 28 U.S.C. § 1920 and 42 U.S.C. § 1988 and $1,122.36 for expenses on appeal under 42 U.S.C. § 1988, for a total amount of $10,492.80.

Addressing next Plaintiff's attorney's fees, the question as to what amount is appropriately awarded to Plaintiff requires the court to assess (i) whether the fees awarded should be reduced for issues such as Plaintiff's counsel's lack of civil rights experience, inadequate time entries, and improper billing; (ii) whether the fees awarded should be enhanced because Plaintiff's counsel took the case on a contingency basis; (iii) whether the fees awarded should be enhanced to reflect the current billing rates of Plaintiff's counsel rather than the rates Plaintiff agreed to pay at the start of this action; and (iv) whether the fees awarded should be reduced to reflect the degree of success Plaintiff achieved in this action. The court will address each matter in turn.

     i.    *Reductions for Inexperience, Inadequate Time Entries, and Improper Billing*

Defendants argue that, even if the court awards Plaintiff attorney's fees, such fees should be significantly reduced.[75] Defendants contend the fees should be reduced to account for Plaintiff's counsel's inexperience in civil rights matters; imprecise, excessive, duplicative, and unreliable time entries; and improper billing.[76]

As to Plaintiff's attorney's fees incurred through trial and post-trial motions, the court finds that the reductions Plaintiff's counsel has already voluntarily applied are sufficient to address the concerns raised by Defendants. The evidence indicates that Plaintiff's counsel discounted her attorney's fees incurred through trial by 40%—i.e., by $177,695—which translates to a discount of nearly one-third of all attorney's fees sought throughout the entire

---

[75] *See, e.g.*, Defs.' Mem. in Opp'n to Pl.'s Suppl. Mot. for Attorney's Fees (CM/ECF No. 289) at 6.

[76] *See id.* at 6-9.

case.[77] This 40% discount is in addition to the discount Plaintiff's counsel also applied to her fee rate when she took Plaintiff's case: although her billing rate had been $275 per hour, she dropped that rate to $225 per hour due to her lack of experience in dealing with cases involving civil rights matters.[78] The court finds that no additional reductions are required for Plaintiff's attorney's fees incurred through trial and post-trial motions.[79]

As to Plaintiff's attorney's fees incurred on appeal, the court generally finds them to be reasonable.[80] The exception pertains to the attorney's fees generated in drafting Plaintiff's appellate brief. Plaintiff's counsel spent approximately 120 hours—approximately $23,750 in fees—in drafting Plaintiff's original 120-page appellee brief. This original brief did not comply with the applicable rules governing the length of appellee briefs, and thus it was rejected by the Tenth Circuit.[81] Thereafter, Plaintiff filed a new 60-page appellee brief that was accepted by the Tenth Circuit.

The court finds that Plaintiff should not receive attorney's fees for a work product that was non-compliant and consequently not accepted as an appellee brief. Thus, Plaintiff is not entitled to the $23,750 fees incurred in what ended up being an extracurricular activity.

---

[77] *See, e.g.*, Dec. 7, 2017 Evidentiary Hr'g Tr. (CM/ECF No. 303) at 95:11-97:3; Pl.'s Evidentiary Hr'g Ex. 3 at 4-5; Pl.'s Evidentiary Hr'g Ex. 4; Pl.'s Evidentiary Hr'g Ex. 5.

[78] *See* Dec. 7, 2017 Evidentiary Hr'g Tr. (CM/ECF No. 303) at 87:4-10. The court notes that, beyond generally arguing that Plaintiff's counsel's billing rate should be discounted for lack of civil rights experience, Defendants do not contend that $225 is an unreasonable billing rate. Indeed, Defendants' expert witness testified that he believed a $225 per hour billing rate is reasonable. *See* Jan. 22, 2018 Evidentiary Hr'g Tr. (CM/ECF No. 312) at 8:20-22.

[79] *See, e.g.*, Dec. 7, 2017 Evidentiary Hr'g Tr. (CM/ECF No. 303) at 35:14-38:25, 38:5-40:17, 41:7-11; Jan. 22, 2018 Evidentiary Hr'g Tr. (CM/ECF No. 312) at 18:6-22, 38:12-41:22; Pl.'s Evidentiary Hr'g Ex. 20.

[80] *See* Dec. 7, 2017 Evidentiary Hr'g Tr. (CM/ECF No. 303) at 27:8-28:15, 39:2-40:17, 41:7-11; Jan. 22, 2018 Evidentiary Hr'g Tr. (CM/ECF No. 312) at 43:10-46:25.

[81] *See* Dec. 7, 2017 Evidentiary Hr'g Tr. (CM/ECF No. 303) at 112:3-113:21.

The court finds that no additional reductions are required and that Plaintiff is entitled to the remainder of attorney's fees incurred on appeal.

ii.  *Contingency Enhancement*

Plaintiff asks the court to consider enhancing Plaintiff's fee awards because Plaintiff's counsel took the case on a contingency basis.[82]

The Tenth Circuit instructs that a contingency enhancement should be viewed with caution and only awarded in "exceptional cases."[83] The Tenth Circuit describes an "exceptional case" to be one where "prior to the litigation, the attorney for the prevailing party was confronted with a 'real risk of not prevailing.'"[84] The court analyzes the risk of not prevailing by (i) considering the law in effect at the time the suit was filed and the extent to which the law was unsettled, and (ii) considering the extent to which the outcome of the case depended on resolution of disputed material facts.[85] "Once a real risk of not prevailing has been demonstrated, the party seeking to enhance the lodestar must also come forward with evidence that, absent an enhancement, 'the plaintiff would have faced substantial difficulties in finding counsel in the local or other relevant market.'"[86]

The present case does not appear to warrant a contingency enhancement. The court did not find the law surrounding Plaintiff's Fourth Amendment claims to be unsettled. Indeed, it was the established nature of the law that led the court to deny the Defendants' claims for qualified

---

[82] *See* Suppl. Mot. and Mem. in Re: Pl's Pending Mot. for Attorneys' Fees, filed Oct. 4, 2017 (CM/ECF No. 280) at 10-13.

[83] *See Homeward Bound, Inc. v. Hissom Memorial Center*, 963 F.2d 1352, 1360 (10th Cir. 1992) (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 728 (1987)).

[84] *See id.* (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. at 729-30).

[85] *See id.*

[86] *Id.* (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. at 731).

immunity. Additionally, while Plaintiff submitted evidence suggesting that Robert J. DeBry's law office—a personal injury firm—was disinterested in his case because it was not likely to make the firm enough money,[87] Plaintiff did not submit sufficient evidence that he had difficulty or would have had difficulty securing a civil rights attorney absent the prospect of a contingency enhancement.

As such, the court declines to apply a contingency enhancement to Plaintiff's attorney's fees.

### iii. *Current Billing Rate Enhancement*

Plaintiff asks the court to enhance the attorney's fees awarded by calculating such fees using Plaintiff's counsel's current billing rate of $350 per hour, rather than the $225 rate Plaintiff's counsel charged throughout the case.[88]

The Tenth Circuit has instructed that "[t]he hourly rate at which compensation is awarded should reflect rates in effect at the time the fee is being established by the court, rather than those in effect at the time the services were performed."[89] "[T]he court should establish, from the information provided to it and from its own analysis of the level of performance and skills of each lawyer whose work is to be compensated, a billing rate for each lawyer based upon the norm for comparable private firm lawyers in the area in which the court sits calculated as of the time the court awards fees."[90]

---

[87] *See* Aff. of Robert Stoedter (CM/ECF No. 280-2).

[88] *See* Suppl. Mot. and Mem. in re: Pl.'s Pending Mot. for Attorneys' Fees (CM/ECF No. 280) at 8-10.

[89] *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983), *overruled on other grounds*, *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 725 (1987); *see also Sussman v. Patterson*, 108 F.3d 1206, 1211-12 (10th Cir. 1997) (quoting *Ramos v. Lamm*).

[90] *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983), *overruled on other grounds*, *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 725 (1987).

The court finds that the evidence does not sufficiently support a rate adjustment beyond the $225 rate Plaintiff's counsel agreed to charge at the onset of the case. Although Plaintiff's counsel submitted an affidavit stating that her current rate is $350,[91] Plaintiff's counsel did not otherwise provide evidence that she had actually submitted bills to clients or received payment of fees at a rate of $350 per hour.[92] Instead, the court finds that the amount of $225 is an appropriate hourly rate and is consistent with the court's own analysis of the efforts of counsel in this case.

### iv.  *Reductions for Degree of Success*

In determining the appropriate amount to award Plaintiff, the court is mindful of the Supreme Court's instruction in *Farrar* that the degree of success obtained is "the most critical factor" in considering the reasonableness of attorney's fees.[93]

As Plaintiff acknowledges,[94] where the success achieved is minimal, a reduction in attorney's fees is warranted. In *Koopman*, after the Tenth Circuit remanded the case, the district court reduced the calculated fees by 60% for lack of success, awarding $15,351.56 in attorney's fees.[95] Similarly, in *Bell v. Board of County Com'rs of Jefferson County*, the Tenth Circuit

---

[91] *See* Pl.'s Evidentiary Hr'g Ex. 3 at 7.

[92] See Dec. 7, 2017 Evidentiary Hr'g Tr. (CM/ECF No. 303) at 106:20-107:10.

[93] *See Farrar v. Hobby*, 506 U.S. 103, 114 (1992).

[94] *See* Reply to Defs.' Mem. in Opp'n to Pl.'s Suppl. Mot. for Attorney's Fees, filed Nov. 15, 2017 (CM/ECF No. 292) at 4 ("Defendants assert that because Mr. Stoedter did not prove actual damages, he is not entitled to full reimbursement for fees and costs. This is true. The amount of total fees should be discounted as this Court finds equitable.").

[95] *See Koopman v. Water Dist. No. 1 of Johnson Cty., Kan.*, 1995 WL 646786, at *5 (D. Kan. Oct. 20, 1995).

affirmed a district court's reduction of the lodestar by 90% (from $168,888 to $16,888)[96] based

on the plaintiff's lack of success:

> Consistent with the Supreme Court's admonition that the degree of success is the most critical consideration in determining the reasonableness of a fee, the district court rightly emphasized the minimal success of the suit. Two of the claims failed outright, and the third did not secure any compensatory or equitable relief. The gross discrepancy between Bell's "extravagant and overreaching" request for $1.4 million and the jury's minimal award is particularly telling. The court's assessment of the other factors, previously discussed in response to particularized objections raised by Bell, lend additional support for its determination. As such we do not find sufficient grounds to disturb the district court's determination of an appropriate fee award in this case.[97]

In considering the present case, where Plaintiff recovered only $1 in nominal damages, a

significant lodestar reduction based on the degree of monetary success is appropriate. As such,

the court reduces the $266,542.20 of attorney's fees incurred through trial by 65% for lack of

success, leaving a total of $93,289.77 in attorney's fees incurred through trial available to

Plaintiff.[98]

As previously discussed, in contrast to the case through trial, Plaintiff largely prevailed at

both the post-trial and appellate stages of litigation. The court finds that no success-related

downward adjustment for attorney's fees incurred at these stages is warranted.[99]

---

[96] *See Bell v. Bd. of Cty Com'rs of Jefferson Cty*, 2005 WL 361510, at *4 (D. Kan. Feb. 15, 2005).

[97] *See Bell v. Bd. of Cty. Comm'rs of Jefferson Cty.*, 451 F.3d 1097, 1104–05 (10th Cir. 2006) (internal citation omitted).

[98] "Success" is by no means measured exclusively monetarily. The vindication, the upholding of a citizen's Fourth Amendment rights is no minor victory.

[99] The court notes that the Tenth Circuit's order remanding the issue of appellate attorney's fees to this court instructed the court to determine "the amount of appellate attorneys' fees that were reasonably and necessarily incurred." *See* Oct. 30, 2017 Tenth Circuit Order (CM/ECF No. 288) at 2. In determining the appropriate amount of appellate attorney's fees to award, the Tenth Circuit did not instruct the court to make any downward adjustments as a result of Plaintiff's limited trial-level success.

## **CONCLUSION**

For the reasons discussed above, the court hereby GRANTS IN PART Plaintiff's application for attorney's fees and costs.[100]

The court finds the appropriate amount of reasonable attorney's fees and costs to be awarded to Plaintiff is $260,552.57 in total:

- $93,289.77 in attorney's fees incurred through trial;

- $67,026.25 in attorney's fees incurred in post-trial motions;

- $89,743.75 in attorney's fees incurred at the appellate court level; and

- $10,492.80 in costs and expenses incurred through trial and appeal.

IT IS SO ORDERED.

DATED this __20th__ day of March, 2018.

Bruce S. Jenkins
United States Senior District Judge

---

[100] The court also hereby strikes as moot Defendants' Motion to Strike Declaration of Robert B. Sykes (CM/ECF No. 294), as Defendants have since had an opportunity to cross-examine Mr. Sykes and produce their own expert witness.

## Exhibit A

| Attorney's Fees | | Original Fees | Plaintiff's Counsel's Voluntary 40% Deduction | 120-Page Appellee Brief Deduction | Original Fees Post Deductions | Discount Rate for Degree of Success | Final Attorney's Fees (Reflecting Deductions and Discount for Degree of Success) |
|---|---|---|---|---|---|---|---|
| | Trial | $444,237.00 | -$177,694.80 | | $266,542.20 | 65% | $93,289.77 |
| | Post Trial | $67,026.25 | | | $67,026.25 | 0% | $67,026.25 |
| | Appeal | $113,493.75 | | -$23,750.00 | $89,743.75 | 0% | $89,743.75 |
| | Total | $624,757.00 | | | $423,312.20 | | $250,059.77 |

| Costs | | §1988 | §1920 | Total Costs |
|---|---|---|---|---|
| | Trial | $243.00 | $9,127.44 | $9,370.44 |
| | Appeal | $1,122.36 | | $1,122.36 |
| | Total | $1,365.36 | $9,127.44 | $10,492.80 |

| Total | | Awarded | Sought | Percentage of Sought |
|---|---|---|---|---|
| | Attorney's Fees | $250,059.77 | $572,409.70 | 43.69% |
| | Costs | $10,492.80 | $10,492.80 | 100.00% |
| | Total | $260,552.57 | $582,902.50 | 44.70% |